# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Decided January 30, 2015

No. 14-7001

BERRY LAW PLLC,
APPELLANT

v.

KRAFT FOODS GROUP, INC.,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00475)

———

*R. Stephen Berry* was on the briefs for appellant.

*Daniel S. Blynn*, *Darrell J. Graham*, and *John E. Bucheit* were on the brief for appellee.

Before: GRIFFITH and PILLARD, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Berry Law PLLC appeals from the district court's dismissal of its implied-in-

fact contract and quasi-contract claims against Kraft Foods Group, Inc. We affirm.

* * *

In August 2010, Stephen R. Berry of Berry Law advised Kraft that it might have an antitrust claim worth tens of millions of dollars against News Corporation, News America Marketing FSI LLC, and News America Marketing In-Store LLC (collectively "News Corp." or "News"). (All referenced facts come from the complaint.) The claim related to possible monopolization and tying in the "sale of in-store promotion services and free-standing-insert coupons placed in newspapers." Kraft's chief litigation counsel, Douglas Cherry, asked Berry for further legal analysis of the possible claim.

Berry Law then prepared a 42-page evaluation memorandum for Kraft's top management analyzing liability and damages issues. Berry alleges that he completed that memo by November 10, 2010. At about the same time, Cherry noted that the matter was "moving pretty fast" and that he wished to brief Kraft's general counsel about the matter. The complaint says that "upon information and belief, [the evaluation memorandum] was forwarded at the very least to Kraft's General Counsel in early 2011." It was presumably Cherry who did the forwarding.

Meanwhile, on October 28, 2010, Berry sent a "retention email" to Cherry. Cherry replied,

> [Y]ou have asked about fees for work to create the proposal to share with management. FWIW [For what it's worth], we have never paid for that work as far as I know for any outside counsel. We've viewed it as part of what we expect counsel to do in bringing

to us a proposal to use their firm. I don't think this will be a big issue for you in view of the size of the ultimate payout should this matter proceed favorably, but if it helps you to get comfortable proceeding as I suggest, *I can tell you that presuming we move forward, you will be our counsel on this matter. That requires no further approvals*.

(Emphasis added in the complaint.)

Berry Law claims that it persisted, "ask[ing] that it be able to carry its evaluation time and bill it later if the matter 'moved forward,'" but does not claim that Kraft reconsidered its earlier denial. Rather, the complaint alleges that, in January or February of 2012, Kraft "'moved forward' with pre-Complaint discussion or negotiation" with News Corp. According to Berry, on February 19, 2012, Kraft "terminated Berry Law's representation, cryptically indicating that it did not believe that some of its purchases from News were overcharged and stating that its damages were uncertain."

Berry Law then sent Kraft a "*quantum meruit* fee statement" and other correspondence seeking $191,528.70 in legal fees and expenses that it believed it was owed. Kraft did not respond to Berry's communications. Berry then filed this action seeking that amount—i.e., "the value of services which enabled and facilitated Kraft's discussion or negotiation with News and its possible compensation by News"—based on an implied-in-fact contract or a quasi-contract theory. The district court dismissed the complaint.

* * *

To state a claim for breach of an implied-in-fact contract, Berry Law must plausibly allege that it rendered Kraft valuable services; that Kraft accepted, used, and enjoyed those

services; and that the circumstances "reasonably notified" Kraft that Berry "expected to be paid" by Kraft. *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 62 (D.C. 2005). Notice to the recipient that the provider expects to be paid is commonly the critical issue. See *Bloomgarden v. Coyer*, 479 F.2d 201, 209 (D.C. Cir. 1973). In applying these principles we will assume arguendo that the alleged discussions or negotiations with News Corp. could qualify as "moving forward" as the term appeared in the context of the email exchange.

Berry Law's implied-in-fact contract claim fails because the complaint does not plausibly allege that Kraft was "reasonably notified" that Berry expected to be paid for any work completed before that point. The complaint alleges that Kraft told Berry that it had "never paid" "fees for work to create the proposal to share with management," and "viewed it as part of what we expect counsel to do in bringing to us a proposal to use their firm." Any expectation that Berry might have had that Kraft would pay for such work was thus unreasonable. See *Jordan Keys & Jessamy*, 870 A.2d at 62.

Cherry's statement that "presuming we move forward, you will be our counsel on this matter" might be read to support an implied-in-fact contract as to any work that Berry Law might complete *after* "moving forward." Indeed, Cherry's email language, "*I can tell you that presuming we move forward, you will be our counsel on this matter*," recited and emphasized in the complaint, suggests just that. But the complaint seeks something completely different: compensation for work performed *before* Kraft's "moving forward"—that is, "the value of services which enabled and facilitated Kraft's discussion or negotiation with News and its possible compensation by News." Indeed the complaint explicitly claims *not* to be "seeking contingent compensation from any value received by Kraft from News." There is thus a

mismatch between Berry's claim and the character of the relief he seeks (and thus, implicitly, the character of the injury inflicted).

Berry Law's quasi-contract claim fares no better. To state such a claim, otherwise known as an unjust enrichment claim, Berry must plausibly allege that he conferred a benefit on Kraft, that Kraft retained the benefit, and that Kraft's retention of the benefit is unjust under the circumstances. *Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 813 (D.C. 2009).

Kraft told Berry that it would not compensate him for work completed prior to management approval. No compensation is due where the "plaintiff did not contemplate a personal fee, or the defendant could not reasonably have supposed that he did." *Bloomgarden*, 479 F.2d at 212. Rather, in view of Kraft's unequivocally expressed position on preliminary work, Berry cannot reasonably have contemplated a fee for work completed before Kraft moved forward, nor could Kraft reasonably have known Berry contemplated any such payment. Instead, Berry completed the memorandum and other legal work in the hope that Kraft would retain him as counsel in the event that Kraft "moved forward." Because Berry Law's "services were rendered simply in order to gain a business advantage," its quasi-contract claim fails. *Id*. at 211.

\* \* \*

The judgment of the district court is

*Affirmed*.